IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BRIAN HARRISON,<br><br>    Plaintiff,<br><br>       v.<br><br>NANCY A. BERRYHILL, ACTING<br>COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION,<br><br>    Defendant. | Civil No. 18-1540 (RMB)<br><br>**MEMORANDUM OPINION & ORDER** |

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon an appeal by Plaintiff Brian Harrison ("Plaintiff"), seeking judicial review of the final determination of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for social security disability insurance benefits. For the reasons set forth below, the Court **VACATES** the decision of the Administrative Law Judge (the "ALJ") and **REMANDS** for further proceedings consistent with this Memorandum Opinion and Order.

I. <u>**PROCEDURAL HISTORY**</u>

On January 29, 2013, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability due to Crohn's

disease, irritable bowel syndrome, depression, anxiety, chronic

back and hip pain, and a sleep disorder, with an onset date of

August 1, 2012. The claim was initially denied on September 11,

2013, and again upon reconsideration on January 18, 2014. Record

of Proceedings ("R.P.") at 15. On February 3, 2016, Plaintiff

testified at an administrative hearing held before

Administrative Law Judge Nycole Watson. At the hearing,

Plaintiff was represented by his attorney, Paul Tendler. The

ALJ also heard testimony from a vocational expert.

On December 14, 2016, the ALJ issued a decision denying

Plaintiff's claim for benefits, based on testimony from the

vocational expert that jobs existed in the economy for

individuals with non-exertional limitations. R.P. at 27-28. On

December 6, 2017, the Appeals Council denied Plaintiff's request

for review, rendering the ALJ's decision as final. R.P. at 1-3.

Plaintiff now seeks this Court's review.

## II.  <u>**STANDARD OF REVIEW**</u>

When reviewing a final decision of an ALJ with regard to

disability benefits, a court must uphold the ALJ's factual

decisions if they are supported by "substantial evidence." Knepp

v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g),

1383(c)(3). "Substantial evidence" means "'more than a mere

scintilla. It means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" Richardson

v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co.

v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d

422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the

court must also determine whether the ALJ applied the correct

legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447

(3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir.

2000). The Court's review of legal issues is plenary. Sykes, 228

F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d

429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the

inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not

less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act

further states,

> [A]n individual shall be determined to be under a
> disability only if his physical or mental impairment or
> impairments are of such severity that he is not only
> unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether
> he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.
>
> At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in

4

significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

## III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff worked as a middle school teacher from 1998 through June 2009. R.P. at 42. Although Plaintiff completed a master's degree in instructional technology in 2012 and briefly worked part-time, he has not been employed full-time since June 2009.

### A. Plaintiff's Medical History and Testimony

At the administrative hearing, Plaintiff testified that he suffers from Crohn's disease, irritable bowel syndrome, anxiety, depression, and ankylosing spondylitis. R.P. at 43. Plaintiff was diagnosed with Crohn's disease around 2000 and eventually required a bowel resection surgery in 2010. Id. Plaintiff testified that he has also developed arthritic conditions in multiple parts of his body as a result of his Crohn's disease. Plaintiff's depression and anxiety date back to the early 2000s, but Plaintiff was also hospitalized during a major depressive

episode in 2013. Id. Although Plaintiff's medical records indicate that he is obese, Plaintiff did not testify as to any impairments related to his weight.

Plaintiff claims that his medical impairments have substantially limited his ability to work and perform daily activities. Plaintiff testified that his Crohn's and depression forced him to miss work and negatively impacted his ability to hold his job as a middle school teacher. According to Plaintiff, his medical conditions worsened in 2009 and he began receiving reprimands from his employer for poor attendance. [R.P. at 56-57]. Plaintiff states that in June 2009, the school asked him to resign if he did not feel that he was healthy enough to meet their expectations and continue to work. Id.

After leaving his job as a middle school teacher, Plaintiff testified that he sought a masters degree, which he hoped would improve his future job prospects. However, Plaintiff contends that his worsening health and the bowel resection surgery disrupted his coursework, forcing him to complete most courses from home. R.P. at 57-58. Plaintiff last worked for Stockton College in a temporary summer role during the Summer of 2012, reformatting and editing documents in Adobe Acrobat. Id. at 50-51. Plaintiff states that his health deteriorated while he was

pursuing his masters degree, rendering him unable to use the degree for its intended purpose. Id. at 58.

Plaintiff testified that his medical conditions have also negatively impacted his ability to perform daily tasks. Plaintiff explained that during a typical day, he drives his daughter to her bus stop down the block, but then returns home to watch television and nap, helps his wife set the table for dinner, and uses the computer for as long as he can without becoming too stiff. R.P. at 66-67. Plaintiff alleges that he is often in too much pain to sleep all the way through the night. Id. at 64-65.

Plaintiff states that he no longer feels capable of helping with many household chores, explaining that he has difficulty doing laundry or emptying the dishwasher due to pain when he bends down. He also stated that he is no longer able to mow the lawn. R.P. at 58. Although Plaintiff can drive, he testified that he feels uncomfortable being in the car for more than twenty minutes because he becomes stiff and becomes anxious about needing to be near a bathroom. Id. at 23.

Plaintiff explained that his physical ailments have exacerbated his depression and anxiety. Plaintiff stated that his medical conditions have made him contemplate suicide because he felt "very useless" to his family. R.P. at 54. Plaintiff claims that he wanted to work, but felt physically unable to do

so, and finally decided to apply for disability benefits at the encouragement of those around him. Id. at 52.

### B. The ALJ's Decision

At Step One of the sequential evaluation process, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of August 1, 2012 through his last insured date of December 31, 2014. R.P. at 17.  At Step Two, the ALJ concluded that Plaintiff's ankylosing spondylitis, Crohn's disease, and generalized anxiety disorder qualified as "severe" impairments through the date last insured. Id. at 17-20.  The ALJ also noted Plaintiff's obesity and major depressive disorder, but found that neither constituted severe impairments under the regulations.

At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R.P. at 20.  In making that determination, the ALJ considered Listings 1.04 (disorders of the spine), 5.06 (inflammatory bowel disease), 12.06 (anxiety disorder).

Next, the ALJ evaluated Plaintiff's Residual Functional Capacity("RFC") and found that through the date last ensured,

Plaintiff had the RFC to perform a range of light work as defined in 20 C.F.R. 404.1567(b):

> He was able to occasionally lift 20 pounds and frequently lift and/or carry 10 pounds. He could stand and/or walk for about six hours in an eight-hour workday and sit for about six hours in an eight-hour workday. He would have needed the ability to change positions at will at the workstation when needed. His ability to push/pull was the same as for lifting/carrying. He could climb ramps/stairs frequently. He needed to avoid climbing ladders/ropes/scaffolds. He needed to avoid crouching, kneeling, or crawling but could have occasionally balanced on level surfaces. He would have been required to work five minutes from a restroom, do no more than frequent handling bilaterally, and avoid concentrated exposure to humidity. He could have understood and carried out simple and routine task[s] but not at the production-rate pace.

> R.P. at 23.

At Step Four, the ALJ found that Plaintiff was unable to perform any past relevant work as a teacher due to "moderate limitation in maintaining concentration, persistence or pace." R.P. at 27. Considering Plaintiff's age, education, work experience, and RFC as determined, the ALJ found at Step Five that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. In particular, the ALJ relied upon the testimony of the vocational expert, who testified that under the ALJ's proposed RFC, Plaintiff would be able to perform certain jobs, including mail clerk (2,900 regional positions), office helper (2,000 regional positions), and router (76,000 regional positions). Using the medical-vocational rules as a framework, the ALJ found that Plaintiff

was not disabled under sections 216(i) and 223(d) of the Social Security Act. Id. at 27-28.

## IV.    DISCUSSION

On appeal, Plaintiff makes several arguments to challenge the ALJ's determination that Plaintiff is not disabled. Specifically, Plaintiff argues that the ALJ erred in: (1) finding that obesity and depression were not "severe" impairments at Step Two; (2) finding that Plaintiff did not suffer from an impairment, or combination of impairments, that met the requirements of a Listing at Step Three; (3) finding that Plaintiff had the RFC to perform range of light work; and (4) finding that Plaintiff could engage in alternative work activities at Step Five. See Plaintiff's Brief ("Pl.'s Br."), p. 19).

### *A. Findings Related to Depression and Obesity*

Plaintiff argues that the ALJ committed a reversible legal error in failing to find that Plaintiff's obesity and depression constituted "severe" impairments at Step Two. See Pl.'s Br., p. 23-24.  The ALJ's decision notes that the "evidence of record cites obesity and major depressive disorder as impairments," but found that "there is no support for finding that either condition causes more than minimal functional limitations and negatively affects the claimant's ability to perform the normal demands of work." R.P. at 20.  Plaintiff argues that the ALJ's

10

failure to deem these impairments "severe" at Step Two was not harmless, because it prevented the impairments from being (1) considered for a Listing at Step Three and (2) properly weighted towards the ALJ's RFC determination. See Pl.'s Br., p. 23-25. Upon review of the record, the Court agrees with Plaintiff that the ALJ's determination that Plaintiff's depression was non-severe was not supported by substantial evidence.

The ALJ's decision notes that Plaintiff started treatment at Cape Counseling Services in 2013 for "severe, recurrent major depressive disorder without psychotic features, generalized anxiety disorder, and mood disorder due to irritable bowel syndrome." R.P. at 20. Curiously, the ALJ's decision states that there are no reports of "any inpatient psychiatric hospitalizations or participation in day treatment programs." Id. at 20, 22. This statement is contradicted in the transcript from the administrative hearing. See R.P. at 43, 44, 57. Indeed, Plaintiff's medical records also include a Cape Counseling Psychiatric Screening Evaluation, which indicates that Plaintiff was hospitalized for a major depressive episode on December 16, 2013. R.P. at 629. The report notes that Plaintiff had "an extensive history of depression" and, on this

instance, reported "suicidal ideation with a plan to use a sword to end his life." Id.

The Commissioner argues that even if the ALJ "erroneously concluded that some of [Plaintiff's] other impairments were non-severe, any error was harmless." See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007)(citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir.2005). However, in both Salles and Rutherford, the ALJ's "non-severe" finding was harmless because the ALJ had properly accounted for the non-severe impairments when setting the RFC. See Murphy v. Colvin, 2014 WL 6065749, at *15 (D.N.J. Nov. 12, 2014).

This Court finds that the ALJ committed a reversible error by determining that Plaintiff's depression was non-severe without considering Plaintiff's extensive history of depression and his hospitalization for a major depressive episode in 2013. The failure to consider this relevant evidence potentially impacted the ALJ's disability analysis at later steps of the sequential process because the ALJ did not evaluate whether Plaintiff's depression qualified for a Listing and may not have assigned proper weight to Plaintiff's combination impairments when assessing his ability to work.

As to obesity, this Court finds that the ALJ did not err in finding that finding that Plaintiff's obesity was non-severe, as

Plaintiff never alleged, and his medical records are devoid of, any specific obesity-related functional limitations.

### B. Failure to Satisfy a Listing at Step Three

The ALJ's decision contains a discussion of three Listings, 1.04 (disorders of the spine), 5.06 (inflammatory bowel disease), 12.06 (anxiety disorder), but finds that Plaintiff's impairments do not meet the criteria for those Listings.  On appeal, Plaintiff argues that the ALJ's decision lacks sufficient reasoning to justify her conclusion that no Listings were satisfied, under the standard set forth in Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). Specifically, Plaintiff claims that the ALJ's "thin to bordering on non-existent" analysis consists of merely "a statement of the requirements and a conclusion that the requirements are not met." Brief at 26.

The Burnett standard "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). As long as an ALJ provides a sufficient explanation of findings to permit a meaningful review, he or she

has satisfied the _Burnett_ standard. _Id._ _See also_ _Diaz v. Comm'r_ _of Soc. Sec._, 577 F.3d 500, 504 (3d Cir. 2009).

Although the ALJ conducted a comprehensive analysis of Listing 5.06 with citations to substantial evidence from Plaintiff's medical history, R.P. at 20-21, the ALJ's discussion of Listings 1.04 and 12.96 lacked that same degree of detail. First, the analysis of Listing 1.04 consisted of little more than a recitation of the Listing's technical requirements along with a conclusory statement that "claimant's back disorders lack the degree of severity required to satisfy the criteria." _Id._ at 20. Next, the ALJ's analysis of Listing 12.06 once again incorrectly states that Plaintiff had no history of hospitalization for psychiatric treatment. _Id._ at 22. As previously noted, the record reflects a hospitalization for a major depressive episode in 2013. In an otherwise thorough analysis of Listing 12.06, this Court cannot conclude that the ALJ's conclusion was based upon substantial evidence given this material misstatement of fact. Therefore, on remand, the ALJ must address these deficiencies in the analysis of Listings 1.04 and 12.06, and support any conclusions with sufficient

references to relevant evidence from Plaintiff's medical
history.

### *C. The ALJ's RFC and Alternate Work Determinations*

Plaintiff also alleges that the ALJ's RFC determination "is
not supported by any reasonable view of the medical evidence and
testimony taken as a whole." Pl.'s Br., p. 29.  Based on this
Court's finding that the ALJ overlooked elements of Plaintiff's
extensive history of depression, including the 2013
hospitalization due to suicidal ideation, the Court agrees with
Plaintiff that the ALJ's RFC determination overlooked material
aspects of Plaintiff's medical history and, therefore, was not
based upon substantial evidence.

The ALJ also relied upon evidence that Plaintiff took two
trips to Disney World with his family to support the ALJ's
conclusion that "there is no objective support for the
diminution of [Plaintiff's] daily activities as attested at the
hearing." R.P. at 25.  The ALJ noted "[t]his presumably active
trip to an extremely large amusement park would occur while he
was alleging total disability."  Although the ALJ correctly
identified that Plaintiff's trips to Disney Word raise questions
about his credibility, the ALJ failed to ask Plaintiff questions
about this trip at the administrative hearing and develop the
record on that issue.  It is quite possible that these trips to

Disney World were quite difficult and required substantial accommodations. Indeed, a review of Plaintiff's medical record from October 29, 2013 indicates that Plaintiff was "esp. concerned since he's going to Disney World next wk and is having a rectal pain/urgency and if doesn't go immediately, pain is much worse and has great anxiety." R.P. at 511. If the ALJ chooses to rely upon these trips in determining Plaintiff's RFC, the ALJ must further develop the record.

This Court finds that in formulating the RFC, the ALJ's analysis was not supported by substantial evidence and may have improperly weighed Plaintiff's history of depression. Because the ALJ's RFC determination necessarily impacts the findings related to Plaintiff's ability to work, this Court need not reach that issue.

## V.    <u>CONCLUSION</u>

Because the ALJ's decision overlooked elements of Plaintiff's extensive history of depression and misstated Plaintiff's record of mental health treatment, the Court cannot determine whether the ALJ's disability analysis was, as a whole, based upon substantial information. Furthermore, the ALJ's failure to cite to specific contradictory medical evidence from the record in the analysis of Listings 1.04 and 12.06 prevents the Court from ascertaining the basis for the ALJ's Step Three

conclusions. Although the ALJ's final conclusions could very well remain unchanged, the Court is unable to meaningfully review the ALJ's determinations without further discussion of the aforementioned issues. Therefore, the Court will vacate the ALJ's decision and remand for further proceedings.

**ACCORDINGLY**, it is on this **26th** day of **February 2019**, hereby

**ORDERED** that the decision of the Administrative Law Judge is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Memorandum Opinion and Order; and it is further

**ORDERED** that the Clerk of the Court shall close this case.


DATED: February 26, 2019


s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE